IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JERRY JOHNSON,                                              No.  3:13-cv-01139-HZ

                          Plaintiff,                        OPINION & ORDER

        v.

CAROLYN COLVIN, Commissioner,
Social Security Administration,

                          Defendant.


Merrill Schneider
Schneider Kerr & Gibney Law Offices
PO Box 14490
Portland, OR 97293

            Attorney for Plaintiff

Adrian L. Brown
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Kathryn Ann Miller
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104

  Attorneys for Defendant

HERNÁNDEZ, District Judge:

  Plaintiff Jerry Johnson brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act.  I have jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)).  For the following reasons, I affirm the Commissioner's decision.

BACKGROUND

  Plaintiff was born in 1970 and was 37 years old at the alleged onset of disability on September 30, 2007.  Tr. 120.  He completed high school, Tr. 131, and reports past work as a security guard, merchant marine, janitor, labor helper, fire truck cleaner, and deck hand, Tr. 133.  Plaintiff alleged disability due to PTSD, anxiety, depression, a gunshot wound to the neck, back problems, memory problems, and seeing people (including his parents) die during Hurricane Katrina.  Tr. 125.

  The Commissioner denied his application initially and upon reconsideration.  Tr. 33-34.  An Administrative Law Judge ("ALJ") held a hearing on June 22, 2011 and a supplemental hearing on November 11, 2011.  Tr. 495, 522.  The ALJ found Plaintiff not disabled on January 31, 2012.  Tr. 16.  The Appeals Council declined review of the matter on May 7, 2013, making the ALJ's decision the final decision of the Commissioner.  Tr. 6-9.

/ / /

/ / /

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure.  See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).  The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can return to past relevant work, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the

Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

The ALJ found Plaintiff's PTSD and depression NOS "severe" at step two in the sequential proceedings.  Tr. 21.  At step three, the ALJ found that the impairments, singly or in combination, did not meet or equal the requirements of any listed impairment.  Tr. 22-23.  The ALJ assessed Plaintiff's RFC and concluded that he could perform "work at all exertional levels but with the following nonexertional limitations…remember, understand and carry out simple and detailed but not complex instructions or tasks typical of occupations with a SVP of one or two…not have any contact with the public…[but can] work in proximity with coworkers…[can] not engage in work requiring teamwork…[but can] respond appropriately to supervision."  Tr. 23.  At step four, the ALJ found that Plaintiff could not perform his past relevant work as a security guard, seaman, or janitor.  Tr. 27; 554-56.  The ALJ found there were jobs existing in the national economy in sufficient numbers that Plaintiff could have performed, such as kitchen helper/dishwasher.  Tr. 27-28.  The ALJ therefore found Plaintiff not disabled under the Commissioner's regulations.  Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards; and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th

Cir. 2004).  "Substantial evidence" means "more than a mere scintilla, but less than a preponderance."  <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the Commissioner.  <u>Id.</u> (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)); <u>see also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  <u>Id.</u>; <u>see also</u> <u>Batson</u>, 359 F.3d at 1193.  However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings.  <u>Bray</u>, 554 F.3d at 1225-26 (citing <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947)); <u>see</u> <u>also</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

DISCUSSION

Plaintiff argues that the ALJ erred by (1) finding Plaintiff not fully credible, (2) rejecting the opinion of treating physician Dr. Robert Henriques, (3) rejecting Plaintiff's neck pain as a severe impairment at step 2, (4) failing to fully develop the medical record regarding Plaintiff's neck pain, and (5) finding Plaintiff could not perform past relevant work and improperly relying on the vocational expert (VE) testimony.

I.     Plaintiff's Credibility

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence."  20 C.F.R. § 404.1529(a).

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins, 466 F.3d at 883; see also Bunnell, 947 F.2d at 346-47.

As factors in his credibility determination, the ALJ relied on evidence in the medical record, a doctor's opinion that Plaintiff was not putting full effort in the examination, inconsistent statements by Plaintiff, and Plaintiff's sporadic work history. Tr. 26-27.

A.    Medical Record

The ALJ found that the medical record did not show the "worsening of [Plaintiff's] symptoms" around September 30, 2007—the date Plaintiff alleges as the onset of disability. Tr. 26. The record indicates that in September 2007, Plaintiff sought treatment for hand dermatitis, and that three weeks earlier, he had been "working on a cruise ship washing dishes for 12 hours a

day[.]" Tr. 222.  In response, Plaintiff states that the record shows he complained of back, chest, and neck pain from 2007 to 2009.  Pl.'s Br. 10.  Plaintiff is correct that in April, September, and October 2008, he complained of back, chest, and neck pain.  Tr. 271, 287, 293, 310.  However, this evidence from 2008 does not rebut the ALJ's finding that around September 2007, the alleged onset of disability, the record does not show a worsening of symptoms.  Plaintiff also cites to a November 2007 diagnostic radiology report of his neck tissue.  Tr. 339.  Dr. Randy Greene reviewed the x-rays and found surgical clips on the right side of his neck, but that the bones were intact and the tissues were normal.  Id.

B.    Malingering

The ALJ referenced Dr. Cheryl Brischetto's opinion that she suspected Plaintiff's "[f]ull effort on mental status seemed questionable, and the data obtained likely under reflects his true capacity."  Tr. 371.  Dr. Brischetto further explained:

> He indicated weakness on screening of attention and memory, although it is not clear that there was full effort on these….He seemed to indicate better functional memory in the interview than his performance on mental status.  However, even with that there were some inconsistencies in his dates reported from what was available in records.

Id.  Plaintiff argues that Dr. Brischetto's opinion does not support the ALJ's finding that Plaintiff was not credible.  Pl.'s Br. 11.  I disagree.  Even if Dr. Brischetto noted some inconsistencies in Plaintiff's reporting of dates, it does not necessarily mean Plaintiff put forth full effort on the exam.  Despite recognizing some inconsistencies in the reporting of dates, Dr. Brischetto opined twice in her report that Plaintiff's effort on the exam was questionable and that the data likely did not reflect Plaintiff's true capacity.  The ALJ's interpretation of Dr. Brischetto's report is a rational reading of the evidence.

/ / /

7 - OPINION & ORDER

C.    Inconsistent Statements

The ALJ found inconsistencies in Plaintiff's statements throughout the record and relied upon these inconsistencies in rejecting Plaintiff's symptom testimony.  Tr. 26.  The ALJ may cite such statements in assessing a claimant's testimony.  Smolen, 80 F.3d at 1284.  The following inconsistent statements were cited by the ALJ:

- Notes from an emergency room doctor who was concerned about drug-seeking behavior because of Plaintiff's "vague history and incongruencies in his employment history."  Tr. 219.

- Plaintiff reported that he could not follow up with seeking treatment at OHSU because he had no money for bus tickets, but then admitted that he had his honored citizen bus pass.  Tr. 405.

- Dr. Brischetto noted that Plaintiff's work history was inconsistent with his disability report.  Tr. 370.

- Plaintiff stated that he had difficulty with speech and became frustrated that others could not understand him.  Yet Dr. Brischetto noted that his "[e]xpressive language was clear and coherent without problems related to fluency or articulation."  Id.  The ALJ agreed with this finding after hearing Plaintiff testify at the hearing.  Tr. 26.

- Plaintiff reported to Dr. Brischetto in October 2009 that his mother had cancer and that some water from Hurricane Katrina got into her infection and killed her.  Plaintiff also stated that his father left when Plaintiff was young, Tr. 367, and that his father died after a house collapsed on him during Hurricane Katrina, Tr. 369.  But then in March 2011, Plaintiff reported that he saw his parents drown in front of him.  Tr. 396.

The ALJ's finding that Plaintiff made inconsistent statements regarding lack of money for bus tickets, his speech difficulty, and how his parents died in Hurricane Katrina are supported by substantial evidence.  The other statements regarding his work history may not be inconsistent in light of some limitation with Plaintiff's memory.[1]

/ / /

---

[1] The ALJ found that "claimant's symptoms are disproportionate to the objective and clinical findings."  Tr. 24.  The ALJ recognized that Plaintiff had some limitation in memory, which is reflected in the RFC that limits Plaintiff to work involving "simple and detailed but not complex instructions[.]"  Tr. 23.

D.      History of Low Earnings

The ALJ reviewed Plaintiff's work history and noted that the most Plaintiff earned in one year was $7,115 in 1999.  Tr. 27.  The ALJ concluded that Plaintiff's unemployment during the relevant period was due to a lack of motivation rather than his impairments.  Id.  The ALJ also noted that Plaintiff stated in March 2011 that he was looking for work, which contradicts Plaintiff's allegation of disability.  Id.  Plaintiff argues that his work history includes years with no earnings because he was previously on SSI.  Pl.'s Br. 11.  The summary of Plaintiff's earnings shows that he had no reported income from 1987 through 1991 and 2008.  Tr. 109.  However, from 1992 to 2010 (which the exception of 2008), Plaintiff's earnings ranged from $53.55 to $7115.  Id.  Although the ALJ is correct that Plaintiff has a history of low earnings, this fact alone does not necessarily mean Plaintiff lacked the motivation to work as opposed to being unable to work due to his impairments.

E.      Credibility Conclusion

Based on the medical record, evidence of malingering, and inconsistent statements, the ALJ's finding that Plaintiff is only partially credible as to the severity of his symptoms is supported by substantial evidence.

II.    Rejection of Treating or Examining Physician Opinion

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Robert Henriques.[2]

Pl.'s Br. 8.  Plaintiff further argues that Dr. Henriques's opinion was consistent with the opinions

---

[2] In Plaintiff's reply brief, Plaintiff argues that Defendant did not address the improper rejection of licensed clinical social worker Danette Burchill's opinion.  Pl.'s Rep. 6.  Defendant did not address this argument because it does not appear in Plaintiff's opening brief.  Because Plaintiff failed to raise the error in his opening brief, the error is waived.  Even if Plaintiff had properly raised this error, the ALJ provided several reasons for according Ms. Burchill's opinion no weight.  Tr. 26.  Ms. Burchill admits she did not fully assess Plaintiff, did not review Plaintiff's medical record, based her opinion on Plaintiff's subjective reports, and met with Plaintiff almost a year and a half after the date of last insured.  Id.

of Dr. Caroline Orsini and Dr. Jeffrey Stevens.  Pl.'s Br. 9; Pl.'s Rep. 5.  Generally, social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining.  Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician than to the opinions of those who do not actually treat the claimant.  Id.; 20 C.F.R. §§ 1527(d)(1)-(2), 416.927(d)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan, 246 F.3d at 1202.  If a treating physician's opinion is not given controlling weight, the ALJ must articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2).  Orn, 495 F.3d at 631.  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by "providing specific and legitimate reasons that are supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).  "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Id. (citation omitted).  A discrepancy between a doctor's chart notes, recorded observations, and opinions, and an assessment of a claimant's abilities, is a clear and convincing reason to reject the doctor's assessment.  Id.

The medical records show that Plaintiff saw Dr. Henriques twice in November 2010 for neck pain.  Tr. 417, 425.  On the first visit, Dr. Henriques ordered an x-ray of Plaintiff's spine and made an initial assessment of cervicalgia, i.e., neck pain.  Tr. 426.  On the second visit, after reviewing Dr. Stevens' assessment of the x-rays, Dr. Henriques confirmed the diagnosis of

cervicalgia.  Tr. 418.  He recommended "preventative measures and postures, and a regimen of heat stretches and isometric exercises" to Plaintiff.  Id.  Dr. Henriques did not recommend any limitations in Plaintiff's functionality due to the neck pain.  Furthermore, Plaintiff is incorrect that Dr. Orsini's opinion is consistent with Dr. Henriques's opinion.  Dr. Orsini saw Plaintiff once in March 2011 and only diagnosed Plaintiff with hypertension, depression, and fatigue.  Tr. 395.

The ALJ did not mention Dr. Henriques in her opinion.  However, at step two of the analysis, the ALJ recognized that additional impairments, including Plaintiff's complaints of neck pain, appear in the record.  Tr. 21.  The ALJ did not consider Plaintiff's neck pain a severe impairment because the symptoms were mild, were controlled by treatment, or were not adequately supported by the medical record.  Id.  The ALJ "need not discuss all evidence presented to her.  Rather, she must explain why significant probative evidence has been rejected."  Vincent on behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (quotation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("the ALJ does not need to discuss every piece of evidence") (quotation omitted).  Here, the ALJ considered Plaintiff's neck pain, but found that it was not a severe impairment.  The ALJ sufficiently explained why Plaintiff's neck pain, and consequently Dr. Henriques's opinion, was not probative.

III.    Step Two – Severe Impairments

Plaintiff argues that the ALJ failed to find his neck pain severe at step two of the sequential analysis.  Pl.'s Br. 5.  The step two inquiry is the *de minimis* screening device used to dispose of groundless claims.  Smolen, 80 F.3d at 1290.  At step two, a plaintiff must present evidence of an impairment or impairments which are so severe that it "significantly limits [a

plaintiff's] physical and mental ability to do basic work activities."  20 C.F.R. § 416.920(c).

"The severity regulation increases the efficiency and reliability of the evaluation process by

identifying at an early stage those claimants whose medical impairments are so slight that it is

unlikely that they would be found disabled even if their age, education, and experience were not

taken into account."  Yuckert, 482 U.S. at 153.  Where the plaintiff meets the *de minimis*

threshold, the ALJ continues with the sequential analysis, considering the effect of all of the

plaintiff's impairments, whether severe or non-severe.  SSR 96-8p, 1996 SSR LEXIS 5 at *14-

15.  Therefore, reversible error occurs only when a severe impairment excluded at step two

caused additional functional limitations not accounted for in the RFC assessment.  Lewis v.

Astrue, 498 F. 3d 909, 911 (9th Cir. 2007).

        In this case, step two of the sequential analysis was resolved in Plaintiff's favor, as the

ALJ continued to subsequent steps.  Thus, any error in neglecting to mention Plaintiff's neck

pain was harmless, so long as all of his impairments were considered in the RFC.  Id.  Plaintiff

does not identify physical limitations due to his neck pain that were omitted from the RFC.

Therefore, any error at step two was harmless.

IV.     Failure to Develop the Record

        Plaintiff argues that the ALJ erred by not fully developing the record regarding Plaintiff's

neck pain and "was required to obtain further medical evidence."  Pl.'s Br. 7, 8.

        The ALJ has a duty to develop the record when there is ambiguous evidence or the ALJ

finds that the record is inadequate to allow for proper evaluation.  Tonapetyan v. Halter, 242 F.3d

1144, 1150 (9th Cir. 2001).  An ALJ does not have a duty to request more information from

physicians, however, if it appears that substantially all of their medical records were before the

ALJ and "[t]here was nothing unclear or ambiguous about what they said." <u>McLeod</u>, 640 F.3d at 884.

Here, the ALJ did not find the record had ambiguous evidence or was inadequate to allow for a proper evaluation. Plaintiff argues that "the ALJ was required to seek clarification," but does not specify why clarification is needed. Pl.'s Br. 8. Plaintiff further argues that he "met his burden of proof" regarding his neck pain. <u>Id.</u> The duty to develop the record exists only to clarify ambiguous evidence or an inadequate record. The ALJ had no such duty here.

V.     Step Four and Five

At step four, the ALJ found that Plaintiff could not return to his past relevant work as a security guard, seaman, or janitor. At step five, relying on the VE, the ALJ found that Plaintiff could perform the work of a kitchen helper/dishwasher. Plaintiff argues that the ALJ was inconsistent by finding that Plaintiff could not return to his past relevant work because Plaintiff had worked as a kitchen helper. Pl.'s Br. 12.

On Plaintiff's application for disability, Plaintiff reported that he worked for various temporary agencies from 1992 to 2007 as a "laborer, mostly kitchen help." Tr. 126. As explained at the hearing, the VE could not extrapolate Plaintiff's duties for the various temporary jobs by only looking at the employer name. Tr. 555. Therefore, the ALJ focused on Plaintiff's past work as a security guard, seaman, and janitor. There is no error at step four. Even if the ALJ had recognized kitchen helper as Plaintiff's past relevant work, the finding that Plaintiff was not disabled would not have changed. The analysis would have ended at step four, rather than step five.

Finally, Plaintiff argues that the ALJ improperly relied on the VE's testimony because Plaintiff's RFC did not include all of Plaintiff's physical impairments. Pl.'s Br. 12. As

explained earlier, Plaintiff's RFC included all limitations that were supported by the record.  The

ALJ did not improperly rely on the VE's testimony.

CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this _____ day of July, 2014

MARCO A. HERNÁNDEZ
United States District Judge